**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT J. ROVETTO, NICOLE A. ROVETTO, <br><br> *Plaintiffs*, <br><br> v. <br><br> DAVID ALLEN DUBLIRER, WADE ASHLEY FAWCETT, TOWER MANAGEMENT SERVICES L.P., TOWER MANAGEMENT SERVICES LLC, TOWER MANAGEMENT FINANCING CORP., TOWER SPRING GARDENS LLC, TOWER SPRING GARDENS ONE 2015 LLC, JOHN DOE 1-5, JOHN DOE CORP/LLC 1-5, <br><br> *Defendants*. | Civil Action No. 20-cv-2497 (JMV) (MF) <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

In this matter, Plaintiffs allege that Defendants improperly compensated and terminated Plaintiff Robert Rovetto and also made false and misleading statements about Plaintiffs. Presently before the Court is Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 19. The Court reviewed all the submissions in support and in opposition[1] and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons discussed below, the motion to dismiss is **GRANTED**.

---

[1] Defendants' brief in support of their motion to dismiss will be referred to as "Def. Br.," D.E. 19-1; Plaintiffs' letter brief in opposition will be "Opp.," D.E. 22; and Defendants' reply brief will be "Reply," D.E. 23.

## I.    FACTS[2] AND PROCEDURAL HISTORY

Plaintiffs are proceeding *pro se*.  The Complaint includes numerous factual allegations stemming from Plaintiff Robert Rovetto's initial employment to his termination, and the Court recounts only the factual background that appears to relate to Plaintiffs' claims.

Defendant David Allen Dublirer is the Vice President of Asset Management at Tower Management Service L.P.  Compl. ¶ 14.  Defendant Wade Ashley Fawcett was the former Superintendent of Spring Garden Apartments and is now the Director of Grounds and Maintenance of Tower Management Service L.P.  *Id.* ¶ 15.  Defendants Tower Management Service, L.P.[3] and Tower Management Service, LLC are property management firms that own, operate, and maintain "numerous residential rental properties throughout New York, New Jersey and Pennsylvania."  *Id.* ¶¶ 16-17.  Defendant Tower Management Financing Corp. is a Delaware Corporation.  *Id.* ¶ 18.  These three Defendants are referred to collectively as "Tower."  *See id.* ¶¶ 16-18.  Defendants Tower Spring Gardens LLC, Tower Spring Gardens One 2015 LLC, and Tower Spring Gardens 1 LLC (collectively, "Spring Gardens") are "residential apartment complex[es] owned by . . . Tower Management Service L.P."  *Id.* ¶¶ 19-21.[4]

Plaintiff Robert Rovetto ("Robert") is a former employee of Spring Gardens.  *Id.* ¶ 24, 73.  Robert began working in maintenance for Spring Gardens on June 30, 2011.  *Id.* ¶ 24. On or around July 21, 2011, Robert and Plaintiff Nicole Rovetto ("Nicole") moved into a one-bedroom

---

[2] The factual background is taken from the Complaint ("Compl."), D.E. 1.  When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[3] Defendants note that the Complaint improperly named Tower Management Service, L.P. as "Tower Management Services, L.P." and Tower Management Service, LLC as "Tower Management Services, LLC."  Def. Br. 1.  The Court uses the names provided by Defendants.

[4] The Complaint does not provide any description of Defendant Does 1-5 or Defendant Does LLC 1-5.  Compl. ¶ 22.

apartment at Spring Gardens pursuant to an Employee Lease Agreement.  *Id.* ¶ 25.  Nicole is an employee of Spring Gardens – she "was hired to assist in various day to day operations within the rental office as well as assisting the maintenance staff with cleaning units during their make ready process" on July 8, 2013 and has not been discharged or terminated.  *Id.* ¶ 36, Opp. 1.

On August 1, 2011, Robert assumed "on-call" responsibility.  *Id.* ¶ 27.  Robert was on-call for seven consecutive days at a time; his on-call weeks rotated with other employees.  *Id.*  While on-call, Robert was required to answer any maintenance calls received outside of regular business hours, determine whether a given call constituted a true emergency, and if so, respond to the location of the emergency within fifteen minutes of receiving the call.  *Id.* ¶ 28.  Robert alleges that he was not provided any additional compensation for on-call shifts, except for the time he spent "physically attending to an emergency call."  *Id.* ¶ 29.

When Robert inquired about compensation for his on-call shifts, Defendants told him that on-call responsibilities were part of the job for which he was already paid, including his apartment.[5]  *Id.* ¶ 30.  Robert was on call for 62 weeks during the period of August 1, 2011 through October 20, 2018.  *Id.* ¶ 31.  During this time, he received an average of three to five paid hours for the weeks he was on-call and, in the event he did not work forty hours during a pay period, he was paid an hourly rate.  *Id.*

Plaintiffs requested and received an apartment transfer to a two-bedroom unit on January 30, 2012; they moved into the new unit on February 2, 2012.  *Id.* ¶ 32.  On September 29, 2015, Robert was promoted to the position of Superintendent for the Spring Gardens properties and

---

[5] The Complaint appears to indicate that the apartment was provided at a reduced rate, although this is not entirely clear.

received an increase in hourly pay.  *Id.* ¶ 44.  On October 13, 2017, Robert received another pay increase following an above average annual performance evaluation.  *Id.* ¶ 51.

Robert requested to remove himself from the on-call rotation on June 1, 2018 and the request was approved.  *Id.* ¶ 52.  Plaintiffs were interested in purchasing a home of their own and sent Dublirer an email on June 3, 2018, asking for clarification of administrative rent compensation.  *Id.* ¶¶ 52-53.  In response, they received a phone call from Fawcett who told them, "You don't get that money, your apartment is part of your job."  *Id.* ¶ 53.  Plaintiffs allege that this statement contradicted company policies.  *Id.*  While Dublirer was at Spring Gardens on September 11, 2018, Plaintiffs allege that he remarked to Robert that Nicole needed Quaaludes because "she's all over the place."  *Id.* ¶ 58.

Plaintiffs closed on their new home on October 22, 2018 and vacated their Spring Gardens apartment on October 28, 2018.  *Id.* ¶¶ 59-60.  Plaintiffs allege that there was an "admin rent" deduction from Robert's November paycheck in the amount of $1,595, purportedly because Plaintiffs did not turn in their apartment keys; Plaintiffs maintain that they had in fact turned in their keys.  *Id.* ¶ 61.  Plaintiffs continue that "[a]ll future gross pay was reduced by" $1,595.  *Id.* ¶ 62.

After Plaintiffs moved out of their Spring Gardens unit, "Robert was required to stay on property at Spring Gardens to be ready and available to work and avoid any travel delays that would arise during his commute to work" when snow was predicted.  *Id.* ¶ 63.  Robert alleges that he was not compensated for staying overnight and when he asked about additional pay, Dublirer replied, "I don't pay you to sleep."  *Id.*  During the overnight stays, Robert used a vacant unit or his desk and had to bring his own meals and sleeping necessities.  *Id.*  On one occasion, he slept on Fawcett's couch.  *Id.*

In May 2019, Plaintiffs had a death in the family and Robert contacted Dublirer to notify him that Plaintiffs would be out of work for the next three days.  *Id.* ¶ 65.  Robert informed the property manager and maintenance staff, and the staff understood what tasks needed to be completed while Robert was out.  *Id.*  Robert further indicated that he could be reached by telephone if needed.  *Id.*  Fawcett texted Robert that afternoon and said "I'll just tell [Dublirer] its your aunt, it sounds better," and suggested that Robert "tell [Dublirer] you had direct involvement in making the funeral arrangements" because "it sounds better."  *Id.* ¶¶ 66-67.  Fawcett indicated that Dublirer was "pissed [Robert] took three days off of work" and when Nicole contacted Fawcett about the situation, Fawcett told her "Rob dropped the ball" and "[t]here was no excuse for [Robert] to take 3 days off" because Fawcett only took off 1 day when his grandmother died.  *Id.* ¶ 67.  Robert then contacted Dublirer; Dublirer assured Robert that he was not upset but needed to determine whether Robert would receive bereavement pay or if personal days would be deducted. *Id.* ¶ 68.  Dublirer told Robert his (Robert's) job was secure.  *Id.*

On July 30, 2019, Robert sustained a minor injury at work and, in accordance with company procedure, reported it to the property manager.  *Id.* ¶ 70.  Robert indicated that he did not require medical attention.  *Id.*  The property manager filed an incident report and instructed Robert not to return to work until he had a physician's clearance.  *Id.*  Robert then scheduled a medical appointment.  *Id.* ¶ 70.  While Robert was waiting to see the doctor, an issue arose between the insurance company and the doctor's office concerning the workers' compensation authorization, however, the issue was ultimately resolved, Robert saw his doctor, and he was cleared to return to work.  *Id.* ¶ 72.

Robert returned to work the next day, and Dublirer fired him.  *Id.* ¶ 73.  Robert received a call from the property manager while driving home and was informed that Dublirer fired him

"because he found out about a pay lawsuit."[6]  *Id.* ¶ 74.  The Complaint alleges that Dublirer told other maintenance staff employees not to have any communication with Robert because "he has litigations against us."  *Id.* ¶ 75.  Robert learned that before he was fired, Dublirer made a formal police report about Robert allegedly making a threat.  *Id.* ¶ 76.  The police told Dublirer that his claim did not amount to an unlawful threat; Dublirer "proceeded with his accusation" and requested that an officer be present during Robert's termination.  *Id.*  Plaintiffs allege that Fawcett "continued to make false claims" to Spring Gardens residents about Robert's termination and told them that Robert "said something to the manager that was threatening toward the VP of the company."  *Id.* ¶ 80.  Moreover, Plaintiffs allege that Fawcett told employees and residents that he heard Robert had a deposition coming up.  *Id.* ¶ 81.

Plaintiffs filed their Complaint on March 6, 2020.  D.E. 1.  The Complaint includes seven claims, some of which include subcounts.[7]  Claim One alleges a retaliatory discharge in violation of 29 U.S.C. § 215(a)(3).  Compl. ¶ 84.  Claim Two alleges "theft of wages" and includes subcounts: Subcount I asserts a claim for on-call time pursuant to N.J. Admin. Code § 12:56-5.6(b) and -5.7; and Subcount II[8] asserts a claim for sleep time pursuant to 29 C.F.R. § 785.20 *et seq.*  *Id.* ¶¶ 85-87.  Claim Three alleges incorrect overtime compensation pursuant to 29 U.S.C. § 216(b).  *Id.* ¶¶ 88-89.  Claim Four alleges "false statement and concealment of facts" pursuant to 18 U.S.C. § 1962.  *Id.* ¶ 90.  Claim Five alleges "false information and hoaxes" pursuant to 18 U.S.C. § 1038.

---

[6] The Complaint does not provide any additional information as the stated legal matter, such as whether Robert had actually filed a lawsuit and, if so, the basis for the suit.

[7] The Court notes that a Complaint should not include subcounts within cclaims; it should assert only standalone counts.  Because Plaintiffs are proceeding *pro se*, the Court will consider each subcount raised as an individual claim.  If Plaintiffs decide to file an amended complaint, they should make clear which specific counts they are raising.

[8] The Complaint skips over a second subcount and labels this allegation as Subcount III.  The Court will refer to this Subcount II.

*Id.* ¶ 91.  Claim Six alleges "false statement and concealment" pursuant to 18 U.S.C. § 1027.  *Id.* ¶ 92.  Claim Seven alleges "defamation/slander" pursuant to 28 U.S.C. § 4101 and includes six subcounts which each assert a different instance of defamation or slander.  *Id.* ¶¶ 93-100.

Defendants responded with the present motion to dismiss.  D.E. 19.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of a complaint, courts must separate the factual and legal elements.  *Fowler*, 578 F.3d 203, 210 (3d Cir. 2009). While restatements of the elements of a claim are legal conclusions and are not entitled to a presumption of truth, *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011), the Court "must accept all of the complaint's well-pleaded facts as true," *Fowler*, 578 F.3d at 210.  However, "[e]ven if plausibly pled . . . a complaint will not withstand a motion to dismiss if the facts alleged do not state 'a legally cognizable cause of action.'"  *Rogers v. New Jersey*, 2017 U.S. Dist. LEXIS 111213, *3 (D.N.J. July 18, 2017) (quoting *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 U.S. Dist. LEXIS 185621, at *2 (D.N.J. Jan. 23, 2015)).

Because Plaintiffs are proceeding *pro se*, the Court construes the Complaint liberally and holds it to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*,

404 U.S. 519, 520 (1972); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).  The Court, however, need not "credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  *Pro se* litigants "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III.   ANALYSIS

### A.  Nicole's Standing as a Plaintiff

Defendants first challenge Nicole's standing and argue that she should be dismissed as a plaintiff.  With respect to Claims One, Two, and Three, Defendants argue that Nicole "cannot assert a personal claim under the [Fair Labor Standards Act ("FLSA")] or the [New Jersey Wage and Hour Law ("NJWHL")] . . . because she was not an employee of Tower during any relevant time period."  Def. Br. 3-4.  Defendants contend that Claims Four, Five, and Six are legally unsustainable because they do not provide a private cause of action, and the subcounts within Claim Seven that pertain to Nicole are "well outside the 1-year statute of limitations for defamation claims."  *Id.* at 4-5.

Turning first to Nicole's standing as a plaintiff for Counts One through Three, the Complaint alleges that Nicole commenced employment with Defendants on July 8, 2013.  Compl. ¶ 36.  The Complaint does not allege any end date for Nicole's employment with Defendants and, in their opposition brief, Plaintiffs indicate that "Nicole was never discharged/terminated."  Opp. 1.  Instead, Plaintiffs claim that following an inadvertent error in December 2013, Nicole was told not to return to work and that her employment status would be "inactive."  Compl.  ¶¶ 37-38. Assuming that Nicole has sufficiently alleged that she is an employee of Defendants, the Court

finds that the Complaint fails to state a claim with respect to Nicole for Claims One, Two, and Three because none of the allegations related to these Claims involve or pertain to her.

As for the remaining claims, Defendants' arguments challenge the legal sufficiency of the causes of action. Because these arguments are not specific to Nicole, the Court addresses them below.

**B. Fair Labor Standards Act Claims**

### 1. Sleep Time (Claim Two, Subcount II)[9]

In this Subcount, Plaintiffs allege that Robert "was required to stay on property, overnight when winter weather was forecasted. Without proper compensation." Compl. ¶ 87. Plaintiff labels this claim as arising under 29 C.F.R § 785.20, which provides that "[u]nder certain conditions an employee is considered to be working even though some of his time is spent in sleeping or in certain other activities."

"Among the bedrock principles of the FLSA is the requirement that employers pay employees for all hours worked." *Smiley v. E.I. DuPont De Nemours & Co.*, 839 F.3d 325, 330 (3d Cir. 2016). "It is well settled that under appropriate circumstances sleep time constitutes work time. The work week ordinarily includes 'all the time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place.'" *Beaston v. Scotland Sch. For Veterans' Children*, 693 F. Supp. 234, 236 (M.D. Pa. 1988) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946)).

---

[9] The Court notes that Defendants' motion to dismiss does not directly address Plaintiffs' allegations that Robert should have been compensated for the nights he was required to sleep at Spring Gardens when snow was in the forecast; however, Defendants move to dismiss Claim Two so the Court will consider whether Plaintiffs have stated a claim for sleep time under FLSA.

Although Robert's overnight hours may ultimately be compensable, the regulation cited in the Complaint – 29 C.F.R. § 785.20 – is not an independent (or separate) basis for a claim.  To plausibly allege a claim for unpaid sleep time, Robert must bring a claim under FLSA.  "To successfully state a FLSA claim, a plaintiff must . . . show 'a failure to pay overtime compensation and/or minimum wages to covered employees.'"  *Harris v. Scriptfleet, Inc.*, No. 11-4561, 2011 WL 6072020, *2 (D.N.J. Dec. 6, 2011).  The Complaint fails to specify whether the allegedly uncompensated sleep time was unpaid overtime or unpaid minimum wages.  To state a plausible claim for unpaid overtime pursuant to 29 U.S.C. § 207, a plaintiff must sufficiently allege that in a given workweek, he worked in excess of forty hours.  *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014).  There are no such allegations in the Complaint.  Additionally, Robert fails to plausibly allege a claim under 29 U.S.C. § 206 for unpaid minimum wage because there is no allegation that Robert did not receive the minimum wage for the hours of work he performed.  Thus, Plaintiffs fail to state a claim for under FLSA.  Subcount II of Claim Two is dismissed.

### 2.  Improperly Compensated Overtime (Claim Three)

Claim Three alleges that Robert "only received overtime wages based on his current[] hourly rate, not total gross wages earned" because the value of his apartment unit was not factored into his overtime rate.  Compl. ¶¶ 88-89.  Defendants argue that Robert's FLSA claim "is legally deficient because Tower did not apply the reasonable value of his free rental unit as a credit toward minimum wage and, as such, it is not properly included [as] part of his regular rate for overtime."  Def. Br. at 8-9.

Under the FLSA, "wage" is defined to include "the reasonable cost . . . to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees[.]"  29 U.S.C. § 203(m)(1).

This provision applies both when lodging is provided in addition to a stipulated wage, and when a charge for lodging is deducted from an employee's wage.  29 C.F.R. § 531.29.

The Code of Federal Regulations provides that the FLSA "requires that the employee receive compensation for overtime hours at 'a rate of not less than one and one-half times the regular rate at which he is employed,'" and that  when "an employee who receives the whole or part of his or her wage in facilities and it becomes necessary to determine the portion of wages represented by facilities, all such facilities must be measured by the requirements of section 3(m) and subpart B of this part." *Id.* § 531.37(a).  Subpart B explains that

> [w]here deductions are made from the stipulated wage of an employee, the regular rate of pay is arrived at on the basis of the stipulated wage before any deductions have been made. Where board, lodging, or other facilities are customarily furnished as additions to a cash wage, the reasonable cost of the facilities to the employer must be considered as part of the employee's regular rate of pay.

*Id.* § 531.37(b).

The Complaint includes allegations that pertain to the value of the Spring Gardens units that were provided to Robert and Nicole, *see* Compl. ¶¶ 25-26, 32-33; however, absent from the Complaint are any allegations about Robert's hourly wage, whether it was above or below minimum wage, and whether deductions were made from his pay for the furnished apartments or if the apartments were provided in addition to a cash wage.  As drafted, the Complaint fails to plausibly allege a FLSA violation.  Claim Three is dismissed.

### 3.  Retaliatory Discharge (Claim One)

Plaintiffs assert that "Defendants willfully violated [their] protected rights under the [FLSA]" pursuant to 29 U.S.C. § 215(a)(3).  Compl. ¶ 84.  Defendants argue that Robert's claim for retaliatory discharge must be dismissed because the Complaint fails to allege facts which demonstrate the prima facie elements of a viable claim.  Def. Br. 5.

Pursuant to FLSA, it is

> "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

29 U.S.C. § 215(a)(3).  To state a *prima facie* FLSA retaliation claim, a plaintiff must plead facts demonstrating (1) that the employee engaged in protected activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and the adverse action.  *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).

The Complaint fails to sufficiently allege that Robert engaged in protected activity.  There is no allegation that he "filed any complaint or instituted or caused to be instituted any proceeding" under FLSA.  "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."  *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).  In other words, "[t]o constitute protected activity, the communication made by an employee must implicate 'a good faith, reasonable belief' that a violation of the law existed."  *Rodriguez v. Ready Pac Produce*, No. 13-4634, 2014 WL 1875261, *8 (D.N.J. May 9, 2014) (citing *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir.1996)).

Plaintiffs allege that they asked Dublirer to clarify the company policy about administrative rent compensation and that Dublirer told them they would not receive money.  Compl. ¶ 53.  This allegation is insufficient to plausibly allege that Plaintiffs engaged in protected activity under FLSA – asking to clarify a company policy, standing alone, does not put a reasonable employer

on notice that Plaintiffs seek to assert their rights under FLSA.  The Complaint further suggests that Robert might have been fired to threatening a company employee.  *Id.* ¶¶ 76, 80.  Making a threat is not be activity protected under FLSA.  Additionally, Plaintiffs allege that Robert was fired "because [Dublirer] found out about a pay lawsuit," *id.* ¶ 74; however, the Complaint contains no allegations that Robert did file a lawsuit.  In fact, the Court cannot determine to what the "pay lawsuit" refers, as it is mentioned once in the Complaint.  Robert therefore fails to plausibly plead a FLSA retaliation claim because he has not sufficiently alleged that he engaged in any protected activity.  Claim One is dismissed.

### C.  New Jersey Wage and Hour Law Claims

In Subcount I of Claim Two, Plaintiffs allege theft of wages in violation of N.J. Admin. Code § 12:56-5.6(b) and -5.7 for not properly compensating Robert for "on-call" time.  Defendants contend that Robert's theft of wages claim should be dismissed as "legally deficient" because it "fail[s] to allege facts sufficient to demonstrate that the time he spent 'on-call' without performing work [was] compensable."  *Id.* at 7.

"The [NJ]WHL is designed to 'protect employees from unfair wages and excessive hours.'"  *Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 458 (N.J. 2015) (quoting *In re Raymour & Flanigan Furniture*, 405 N.J. Super. 367, 376 (N.J. Super. Ct. App. Div. 2009)).  The law "establishes not only a minimum wage but also an overtime rate for each hour of work in excess of forty hours in any week for certain employees."  *Id.*  In addition, the New Jersey Administrative Code provides the following:

> (a) When employees are not required to remain on the employer's premises and are free to engage in their own pursuits, subject only to the understanding that they leave word at their home or with the employer where they may be reached, the hours shall not be considered hours worked.  When an employee does go out on an on-

> call assignment, only the time actually spent in making the call shall be counted as hours worked.
>
> (b) If calls are so frequent or the "on-call" conditions so restrictive that the employees are not really free to use the intervening periods effectively for their own benefit, they may be considered as "engaged to wait" rather than "waiting to be engaged". In that event, the waiting time shall be counted as hours worked.

N.J. Admin. Code § 12:56-5.6. The Code further provides that

> "[o]n-call" employees may be required by their employer to remain at their homes to receive telephone calls from customers when the company office is closed. If "on-call" employees have long periods of uninterrupted leisure during which they can engage in the normal activities of living, any reasonable agreement of the parties for determining the number of hours worked shall be accepted. The agreement shall take into account not only the actual time spent in answering the calls but also some allowance for the restriction on the employee's freedom to engage in personal activities resulting from the duty of answering the telephone.

*Id.* § 12:56-5.7.

When considering on-call time claims under the NJWHL, courts have applied the same standards that "govern the viability of a FLSA claim to recover wages owed for on-call hours," finding that the NJWHL and the FLSA use "nearly identical language" in their implementing regulations. *See Cannon v. Vineland Hous. Auth.*, 627 F. Supp. 2d 171, 175 n.4 (D.N.J. 2008) (discussing N.J. Admin. Code. § 12:56-5.6(b) and 29 C.F.R. § 553.221(d)). Four factors are considered to determine whether on-call time is compensable: (1) "whether the employee may carry a beeper or leave home"; (2) "the frequency of calls and the nature of the employer's demands"; (3) "the employee's ability to maintain a flexible on-call schedule and switch on-call shifts"; and (4) "whether the employee actually engaged in personal activities during on-call time." *Ingram v. County of Bucks*, 144 F.3d 265, 268 (3d. Cir. 1998). "If these factors reveal onerous on-call policies and significant interference with the employee's personal life," the on-call time is compensable. *Id.*

14

As drafted, the Complaint fails to state a claim for unpaid on-call time.  The provisions of the New Jersey Administrative Code cited in the Complaint do not provide an independent cause of action – Plaintiffs instead must bring a claim under the NJWHL, which they have failed to do. Absent from the Complaint are factual allegations that show whether and to what degree Robert's life was disrupted while he was on-call, beyond the assertion that if a call was received, Robert was required to respond within fifteen minutes.  *Id.* ¶ 28.  For example, there are no allegations as to whether Robert had to remain at Spring Garden while on-call; how often he received and responded to calls; whether Robert was able to switch on-call shifts as necessary; and whether Robert was able to engage in personal activities while on-call.  Without such allegations, Robert has failed to demonstrate that his on-call time was compensable under the NJWHL.  Subcount I of Claim One is dismissed.

### D. Criminal Violations Pursuant to Title 18

Plaintiffs allege that Defendants made false and misleading statements and bring claims under Title 18 of the United States Code.  Defendants contend that Claims Four, Five, and Six must be dismissed because "Title 18 . . . is the main criminal code of the federal government" and the statutes Plaintiffs invoke do not provide a private civil right of action.  Def. Br. 11.

Ordinarily, federal criminal statutes do not provide individuals with a private right of action in a civil case.  *See, e.g.*, *Weeks v. Bowman*, No. 16-9050, 2017 WL 557332, at *2 (D.N.J. Feb. 10, 2017) (dismissing civil matter for lack of subject matter jurisdiction because criminal statutes cited by the plaintiff did not create a private right of action).  If a statute provides a private right of action, however, an individual may "bring suit to remedy or prevent an injury that results from another party's actual or threatened violation of a legal requirement."  *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 296 (3d Cir. 2007).

### 1.  18 U.S.C. § 1962 (Claim Four)

Claim Four alleges that "Defendants demanded Plaintiff seek medical clearance to return to work after [a] minor work-related injury, claiming it was the standard requirement of all Workers Compensation Claims," and thereby "[p]urposefully misle[d] Plaintiff to orchestrate the future retaliation plan" in violation of 18 U.S.C. § 1962. Compl. ¶ 90. Claim Four also states that Plaintiffs "ask the court for relief and remedies recoverable for willfully providing false statement[s] and concealment of facts pursuant to N.J.S.A. § 34:15-39.1."

18 U.S.C. § 1962 details "prohibited activities" under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961 *et seq*. RICO provides a private right of action. 18 U.S.C. § 1964. The law provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]" 18 U.S.C. § 1964(c). To bring a federal civil RICO claim in accordance with 18 U.S.C. § 1962, a plaintiff must allege "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Gunter v. Ridgewood Energy Corp*., 32 F. Supp. 2d 166, 173 (D.N.J. 1998). To establish a "pattern of racketeering," a plaintiff must allege "at least two predicate acts of racketeering that occurred within ten years of each other." *Slimm v. Bank of Am. Corp*., 2013 WL 1867035, at *20 (D.N.J. May 2, 2013).

The New Jersey law cited in the Complaint is part of New Jersey's workers' compensation laws. The specific statutory provision referred to in the Complaint provides in relevant part that

> [i]t shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer, or because he has testified, or is about to testify, in any proceeding under the chapter to which this act is a supplement.

16

N.J. Stat. Ann. § 34:15-39.1.

Plaintiffs fail to state a claim under RICO.  The Complaint contains no allegations that Defendants conducted an enterprise through racketeering activity and does not identify two RICO predicate offenses that occurred within the past ten years.  Insofar as Plaintiffs seek to assert a claim for a violation of New Jersey's workers compensation laws, they have also failed to plausibly plead such a claim.  The Complaint does not include any allegations that the Defendants engaged in retaliatory acts or terminated Robert's employment because he claimed or attempted to claim workers' compensation benefits.  Instead, the Complaint contains factual allegations suggesting that Robert was fired because of a "pay lawsuit" or because he made an unlawful threat.  Compl. ¶¶ 74, 76, 80, 81.  Claim Four is dismissed.

### 2.  18 U.S.C. § 1038 (Claim Five)

Claim Five alleges a violation of 18 U.S.C. § 1038 for "false information or hoaxes." Specifically, it asserts that "Dublirer reported false and misleading facts to law enforcement under false intentions as well as request[ed] police presence under false pretenses to use as [a] disguise for terminations."  Compl. ¶ 91.  18 U.S.C. § 1038 includes a provision allowing for private civil actions; however, the provision is inapplicable to the facts of this case.  18 U.S.C. § 1038 provides that

> [w]hoever engages in any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of chapter 2, 10, 11B, 39, 40, 44, 111, or 113B of this title, section 236 of the Atomic Energy Act of 1954 (42 U.S.C. 2284), or section 46502, the second sentence of section 46504, section 46505 (b)(3) or (c), section 46506 if homicide or attempted homicide is involved, or section 60123(b) of title 49 is liable in a civil action to any party incurring expenses incident to any emergency or investigative response to that conduct, for those expenses.

18 U.S.C. § 1038(b).  "Section 1038 was designed to prevent and punish phony bomb threats and other such hoaxes where no real threat existed, but law enforcement time and effort would be needlessly (and intentionally) sidetracked into looking for nonexistent weapons and fictitious imminent threats."  *United States v. Brahm*, 520 F. Supp. 2d 619, 626 (D.N.J. 2007).

The Complaint alleges that Dublirer falsely reported to law enforcement a threatening statement allegedly made by Robert.  Compl. ¶¶ 91, 76.  These allegations do not state a claim under 18 U.S.C. § 1038, and Count Five is dismissed.

### 3.  18 U.S.C. § 1027 (Claim Six)

Claim Six alleges a violation of 18 U.S.C. § 1027 for "false statement and concealment of facts in relation to documents required by the Employee Retirement Income Securities Act."  This criminal statute does not create a private cause of action.  *Bey v. Qusim*, No. 19-16349, 2020 WL 4364332, *2 n.1 (D.N.J. July 29, 2020).  Claim Six is dismissed with prejudice.  *See Jackson v. Bolandi*. No. 18-17484, 2020 WL 255974, *7 (D.N.J. Jan. 17, 2020) (dismissing with prejudice all claims a plaintiff tried to assert that lacked a private cause of action).

### E.  Defamation/Slander (Claim Seven)

Claim Seven includes six Subcounts for defamation, which all arise under 28 U.S.C. § 4101.  Defendants argue that Nicole should be dismissed as a plaintiff for the defamation and slander claims because "only subcounts I and II make any reference to [her]," and none of the relevant allegations "are legally sufficient to sustain a defamation claim."  Def. Br. at 4-5.  Moreover, Defendants argue that "both alleged incidents occurred well outside the 1-year statute of limitations for defamation claim."  *Id.* at 5.  As for Robert, Defendants argue that Claim Seven's six subcounts "are legally deficient and must be dismissed."  *Id.* at 12.

18

28 U.S.C. § 4101 is a provision of the Securing the Protection of our Enduring and Established Constitutional Heritage Act (SPEECH Act), 28 U.S.C. §§ 4101 *et seq.*, which was enacted "to prohibit recognition and enforcement of foreign defamation judgments and certain foreign judgments against the providers of interactive computer services."  Securing the Protection of our Enduring and Established Constitutional Heritage Act, Pub. L. No. 111-223, 124 Stat. 2380. The statutory provision cited in the Complaint provides a definition of "defamation," however, "[d]efamation is not a federal statutory cause of action." *Kaul v. Christie*, No. 16-2364, 2017 WL 2953680, *20 (D.N.J. June 30, 2017).

Insofar as Plaintiffs intended to allege a defamation claim under the common law, they have failed to plausibly do so.  To plead defamation, a plaintiff must allege that (1) a false statement was made concerning her; (2) the statement was published to a third party and not otherwise privileged; (3) the publisher was at least negligent in publishing the statement; and (4) damages. *Robles v. U.S. Envtl. Universal Servs., Inc.*, 469 Fed. Appx. 104, 109 (3d Cir. 2012) (citing *DeAngelis v. Hill,* 847 A.2d 1261, 1267-68 (N.J. 2004)).  Under New Jersey law, in a "complaint charging defamation, plaintiff must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication." *Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 63 (N.J. Super. Ct. App. Div. 1986).  A vague conclusory allegation is insufficient to plausibly plead defamation. *Id.*

Subcount I alleges that Fawcett "misused his position and power by providing statement[s] to convince Plaintiff to assume it wasn't in their best interest.  Additionally, intimidating to believe it would jeopardize [Robert's] position."  Compl. ¶ 93.  This subcount apparently refers to allegations in the Complaint's statement of facts detailing that Nicole made a mistake at work, was told not to return to work, and had her employee status changed to "inactive" until another position

was found for her.  *Id.* ¶¶ 36-39.  Subcount II alleges that "Dublirer held no merit in criticizing Nicole in an emotional state," apparently referring to Dublirer's comment that Nicole needed Qualuudes.  *Id.* ¶¶ 94, 58.  Subcount III alleges that "Fawcett maliciously misused his position to make false accusations regarding the time off work" and that Fawcett intended "to defame Robert's credibility as a responsible, dedicated employee within Tower."  *Id.* ¶ 95.  This claim purportedly relates to the factual allegations concerning Robert's request to take time off for a family member's funeral.  *Id.* ¶¶ 65-69.  Subcount IV alleges that Fawcett "maliciously disclosed" to Dublirer that Plaintiffs intended "to pursue legal action for wages owed . . . in retaliation to deflect his own reprimand by Dublirer" which "ultimately caused the retaliatory discharge of employment."  *Id.* ¶ 96.  Subcount V alleges that Dublirer violated company policy by (1) "publicly terminating Robert in an open area of the property" where employees and the general public could observe, (2) "making false statements to police, altering Robert's true reputation," and (3) "providing false information to Tower employees" and Robert's litigation against Tower.  *Id.* ¶¶ 97-99.  Finally, Count VI alleges that "Fawcett continues to make false, misrepresented statements" to residents of Spring Gardens and current and former Tower employees.  *Id.* ¶ 100.

These conclusory allegations do not plead the required elements of a defamation claim. The Court dismisses Claim Seven in its entirety.  The Court also notes that some of these subcounts appear to be time barred.  Under New Jersey law, "[e]very action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander."  N.J. Stat. Ann. § 2A:14-3.[10]

---

[10] In light of the foregoing analysis, the Court does not reach the additional arguments raised by Defendants.

## IV.     CONCLUSION

For the reasons stated above, Plaintiff's motion to dismiss is **GRANTED**.  D.E. 19.  Claims One, Two, Three, Four, Five, and Seven of Plaintiffs' Complaint are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  Claim Six is dismissed with prejudice. Plaintiffs are granted leave to amend Claims One, Two, Three, Four, Five, and Seven and have thirty (30) days to file an amended complaint consistent with this Opinion.[11]  If Plaintiffs fail to do so, these Claims will be dismissed with prejudice.  An appropriate Order accompanies this Opinion.


Dated: November 30, 2020

_____
John Michael Vazquez, U.S.D.J.

---

[11] The Court again emphasizes that if Plaintiffs amend their Complaint, they should assert separate counts rather than claims containing subcounts.